## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| INNOVATIVE OFFICE | : | CIVIL ACTION |
| PRODUCTS, INC., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 05-04037 |
| | : | |
| SPACECO, INC., et al, | : | |
| Defendants. | : | |

### MEMORANDUM AND ORDER

**Stengel, J.**                                                    **August 23, 2007**

This is a patent law infringement case involving devices to position electronic

equipment such as flat screen televisions.  The court held a Markman[1] hearing on

February 27, 2007.  On April 4, 2007, the court received notice that one of the defendants

had entered bankruptcy proceedings and the court placed the case in civil suspense on

April 10, 2007.  On May 31, 2007, the parties requested that the court complete and issue

the Markman order per an oral order of Judge Howard Tallman of the United States

Bankruptcy Court for the District of Colorado.  Therefore, the court has construed the

---

[1] In Markman v. Westview Instruments, 517 U.S. 370, 372 (1996), the Supreme Court held that the construction of a patent is a matter of law to be conducted by the court and not the jury.  Determining whether a patent has been infringed is a two-step analysis.  Cyber Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc) (citations omitted).  First, a court must properly construe the patent's claims to determine their scope and meaning.  Id.  Second, the properly construed claim must be compared to the device accused of violating the patent to determine whether the defendant has infringed the plaintiff's patent.  Id.  The purpose of the Markman hearing is to accomplish the first step of the process because the bedrock principle of patent law requires that the claims of the patent define the invention to which the patentee has the right to exclude others.  Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005 (en banc), cert denied, 126 S. Ct. 1332 (2006).  After the court has properly construing the patent claims, the finder of fact performs the second step of the analysis by comparing the claims to the allegedly infringing device to determine if the patent has been infringed.  See Bai v. L&L Wings, Inc., 160 F.3d 1350, 1353 (Fed. Cir. 1998); Wolverine World Wide, Inc. v. Nike, Inc., 38 F.3d 1192, 1199 (Fed. Cir. 1994).

following claim terms as outlined below.

## I.  BACKGROUND[2]

Plaintiff Innovative Office Products, Inc. ("Innovative") is a Pennsylvania corporation that develops and produces electronic device support products such as monitor arms and accessories to position electronic devices such as flat screen displays and tilter assemblies.  Second Am. Compl. ¶¶ 1, 7.  Defendant SpaceCo, Inc. ("SpaceCo") is a Colorado corporation.  Id. ¶ 2.  Defendant SpaceCo Business Solutions, Inc. ("SpaceCoBS") is a Nevada corporation.  Id. ¶ 3.  Both defendants are also in the business of developing and selling monitor extension arms to position similar electronic devices.  Id. ¶ 9.  Both defendants market monitor extension arms under the mark "SPACEARM."  Id.

The following seven patents are at issue in this case:

(1)    On January 14, 2003, the United States Patent and Trademark Office (the "USPTO") issued United States Patent No. 6,505,988 (the "'988 patent").[3] for an invention entitled "Tilter for Positioning Electronic Devices." Id. at ¶ 18.

(2)    On February 15, 2005, the USPTO issued United States Patent No. 6,854,698 (the "'698 patent") for an invention entitled "Arm Apparatus for Mounting Electronic Devices."  Id. at ¶ 19.

(3)    On October 18, 2005, the USPTO issued United States Patent No. 6,955,328 (the "'328 patent") for an invention entitled "Arm Apparatus for

---

[2] The court has only included facts relevant to claim construction.  The parties' pleadings contain many allegations that will become applicable during the infringement stage.

[3] Odd N. Oddsen, Jr. invented the subject matter of all the patents and Innovative is the lawful owner. Compl. ¶¶ 18-25.

Mounting Electronic Devices." Id. at ¶ 20.

    (4)    On January 10, 2006, the USPTO issued United States Patent No. 6,983,917 (the "'917 patent") for an invention entitled "Arm Apparatus for Mounting Electronic Devices." Id. at ¶ 21.

    (5)    On February 7, 2006, the USPTO issued an Ex parte Reexamination Certificate of United States Patent No. 6,478,274 (the "'274 patent") for an invention entitled "Arm Apparatus for Mounting Electronic Devices." Id. at ¶ 22.

    (6)    On June 27, 2006, the USPTO issued United States Patent No. 7,066,433 (the "'433 patent") for an invention entitled "Arm Apparatus for Mounting Electronic Devices with Cable Management System." Id. at ¶ 23.

    (7)    On March 28, 2006, the USPTO issued United States Patent No. 7,017,874 (the "'874 patent") for an invention entitled "Arm Apparatus for Mounting Electronic Devices." Id. at ¶ 21.

All of the patents-in-suit, with the exception of the '988 Patent, relate to Innovative's novel adjustable monitor arm, which was invented in 1999 by Odd N. Oddsen, Jr.  Pl's Markman Br. p. 5.

## II.    STANDARDS FOR PATENT CONSTRUCTION[4]

    A patent must describe the exact scope of an invention in order to "secure to the patentee all to which he is entitled, and to apprise the public of what is still open to them." Markman v. Westview Instruments, 517 U.S. 370, 373 (1996) (citation omitted).  This is accomplished by the patent specification, which describes the invention, and the patent claims, which point out and claim the subject matter of the patent.  Katz v. AT&T Corp.,

---

[4] Congress has given exclusive jurisdiction to the Federal Circuit over an appeal from a final decision of a district court of the United States where the jurisdiction of the district court was based on 28 U.S.C. § 1338.  28 U.S.C. 1295(a)(1).  Therefore, case law from the Federal Circuit is binding on this court.

63 F. Supp. 2d 583, 589 (E.D. Pa. 1999).

Claim construction is a question of law. <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967, 970-71 (Fed. Cir. 1995), <u>aff'd</u> 517 U.S. 370 (1996).  Patent construction "begins and ends in all cases with the actual words of the claim." <u>Renishaw PLC v. Marposs Societa' per Azioni</u>, 158 F.3d 1243, 1248-49 (Fed. Cir. 1998).  The words of the claim must be given their "ordinary and customary meaning." <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc), *cert denied*, 126 S. Ct. 1332 (2006).  This "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." <u>Id</u>. at 1313.

This person of ordinary skill must read the claim term "not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."[5] <u>Id</u>.  A court should rely on the specification during claim construction and give claims "their broadest reasonable construction in light of the specification as it would be interpreted by one of ordinary skill in the art." <u>Id</u>. at 1316-17. While a claim must be read in light of the specification, limitations from the specification

---

[5] The Patent Act requires that the specification "contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention."  35 U.S.C. § 112.  The specification "acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication." <u>Vitronics</u>, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  It is normally the best guide because of the statutory requirement that the specification describe the claimed invention in "full, clear, concise, and exact terms." <u>Phillips</u>, 415 F.3d at 1315 (quoting 35 U.S.C. § 112 ¶ 1).

are not to be read into the claim.  <u>Prima Tek II, L.L.C. v. Polypap, S.A.R.I.</u>, 412 F.3d

1284, 1289 (Fed. Cir. 2005);  <u>Teleflex, Inc. v. Ficosa N. Am. Corp.</u>, 299 F.3d 1313, 1326

(Fed. Cir. 2002); <u>see also</u> <u>Phillips</u>, 415 F.3d at 1312 ("The written description part of the

specification itself does not delimit the right to exclude. That is the function and purpose

of claims.") (citing <u>Markman</u>, 52 F.3d at 980).

Beyond the patent specification, the Federal Circuit has also affirmed the use of

another source of evidence that is intrinsic to the patent: the patent's prosecution history.

415 F.3d at 1317.  The prosecution history consists of proceedings before the Patent and

Trade Office ("PTO") and the prior art.  <u>Id</u>.  The prosecution history "provides evidence

of how the PTO and the inventor understood the patent" and whether the inventor limited

the scope of the patent claims during the course of prosecution.  <u>Id</u>.  However, since the

prosecution history is the record of an ongoing negotiation between the PTO and the

applicant, it therefore lacks the clarity of the specifications and is less useful for claim

construction.  <u>Id</u>.

In addition to intrinsic evidence, courts may also consider extrinsic evidence, so

termed because it is external to the patent, including expert and inventor testimony,

dictionaries, and learned treatises.  415 F.3d at 1317.[6]  A court may consult dictionaries

but cannot use them to overcome specific evidence of the meaning of a claim term.  <u>Id</u>. at

1322.  Extrinsic evidence, however, is given less weight by courts than intrinsic evidence,

---

[6] The <u>Phillips</u> opinion clarifies that a court should give extrinsic evidence a less prominent role than the patent specification and the prosecution history.  415 F.3d at 1319.

and extrinsic evidence that is inconsistent with the specification or prosecution history should be given no weight at all.  Id. at 1318-19.  However, extrinsic evidence can help educate the court about the field of the invention and what a person of ordinary skill in the art would understand claim terms to mean.  Id. at 1319.

## III.    CLAIM CONSTRUCTION

### A.    Claims Relating to Channels of the Extension Arms

#### (1)    Roller

The term "roller" is used in various claims for the '274 Patent; the '698 Patent, the '917 Patent, and the '433 Patent.  The parties dispute two aspects of this term: (1) whether the roller must revolve independent of the channel and (2) whether it must have a hole through it.[7]  Innovative urges the court to construe the term roller as "an elongated body with a central portion between the sidewalls of the channel and the ends which extend outward of the sidewalls of the channel."  Defendants argue for a much narrower definition and assert that the roller must revolve or rotate and have a hole therethrough.

In support of its construction, Innovative points to the claim language from the '274 Patent indicating that the roller is integrally cast as part of the upper channel and is configured to be pivotally attached to the first end cap.  Pl's Markman Br. Ex. A. col.15 ll. 13-38.  Additionally, the specification to the '274 Patent states that the rollers are

---

[7] Defendants do not dispute that the roller is an elongated body that extends between and beyond the sidewalls of the channel and that extends upward from the bottom wall of the channel for the distance spanning between the sidewalls of the channel.  Defs' List Claim Terms, Mar. 9, 2007.

"rigidly attached to the upper channel...by welding" and "integrally cast."  Id. at col.2 ll. 34-41, 57-63; col. 5 ll. 55-60, 62-65.  Since the roller is physically connected to the channel through a casting or welding process, the roller can only rotate or move relative to the end cap when it pivots as part of the channel.

Defendants unsuccessfully attempt to defeat the language of the patent specification with reference to extrinsic evidence.  Defendants argue that roller derives from a Latin term for wheel and, by extension, the roller must revolve or rotate based on the ordinary dictionary meaning of the term.  Construing roller to require a piece that revolves like a wheel would exclude the preferred embodiment described in the patent claim and specification that the rollers are integrally cast as part of the channel.  The defendants' claim construction would offend the claim construction principle that it is improper to construe claims to exclude the preferred embodiments of the patent specification.  Sandisk Corp. v. Memorex Prods., 415 F.3d 1278, 1285 (Fed. Cir. 2005), cert. denied, 126 S. Ct. 829 (2005) (citing Vitronics, 90 F.3d at 1538); Hoechst Celanese Corp. v. BP Chems. Ltd., 78 F.3d 1575, 1581 (Fed. Cir. 1996).  The Phillips decision also supports Innovative's claim construction by emphasizing that a court should give extrinsic evidence, such as dictionary definitions, a less prominent role than the patent specification and prosecution history.

Defendants further argue, in support of their claim construction, that Innovative acted inequitably because Innovative did not assert that its rollers were non-rotatable until

a November 2003 amendment to the '698 Patent that Innovative filed one year after

defendants' allegedly infringing product appeared on the market.  Defendants' inequitable

conduct argument is erroneous because the prior art for the '274 Patent, filed on May 10,

1999, states that the rollers are rigid and attached by welding.  Pl's Resp. Markman Br.

Ex. K. at pp. 3, 10-13, 17.

Defendants also attempt to limit the patent by requiring that the roller have a "hole

therethrough" by referencing the specification to the '274 Patent.  Pl's Markman Br. Ex.

A col. 8 ll. 30-34.   Innovative argues that it is inappropriate to read the claim language

so narrowly.  Instead, the claims should be construed to permit any means of pivotal

attachment to the end cap.  According to the Federal Circuit in Phillips, a court should

give claim specifications "their broadest reasonable construction in light of the

specification as it would be interpreted by one of ordinary skill in the art."  415 F.3d at

1316-17.  The court will follow this mandate.

The court will adopt Innovative's definition and find that "roller" means "an

elongated body with a central portion between the sidewalls of the channel and ends

which extend outward of the sidewalls of the channel."

### (2)   Roller Walls

Defendants have not identified a genuine dispute over this term in their briefs or at

the Markman hearing.  Therefore, the court will not provide a claim construction for this

term.[8]

      **(3)    Integrally Cast**.

Various claims involving the '274, '698, and '917 Patents state that the rollers are integrally cast with the channel. Innovative argues that in accordance with its customary and ordinary meaning, integrally cast means "formed by cast molding as part of the same piece." In support of this reading, Innovative cites to the dictionary definition of cast ("something that is formed by casting in a mold or form") and the definition of integral ("formed as a unit with another part").

Defendants assert "integrally cast" means "formed using a one-step process." Defendants derive this extraneous and limiting definition from an amendment to the '917 Patent. Innovative contends that this definition is taken out of context because the statement in the amendment was intended to emphasize the difference between the two-step process of the prior art and the single step process required by integral casting. The purpose of consulting the prosecution history is to exclude any interpretation that was previously disclaimed during the prosecution. ZMI Corp. V. Cardiac Resusciator Corp., 844 F.2d 1576, 1580 (Fed. Cir. 1988). Since there was no disclaimer, it would be improper to limit integrally cast as meaning formed using a one-step process.

The court will refuse to improperly limit the term and will adopt Innovative's construction to find that "integrally cast" means "formed by cast molding as part of the

---

[8] A court is only required to construe material claims terms that the parties dispute. Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F3.d 795 (Fed. Cir. 1999).

same piece" in accordance with its customary and ordinary meaning

### (4)    Projection

This term is used in Claim 19 the '328 Patent, which defines an end cap including

pairs of projections extending inwardly opposing each other from said sidewall of the

endcap.  Pl's Markman Br. Ex. D. col. 16 ll. 10.  Innovative argues that this term should

be construed to mean "a part which projects or juts out from the sidewall of the end cap."

Innovative bases this definition on the ordinary meaning of the term projection as a

portion which projects or juts out and the specification for the patent and drawings that

show pairs of spaced apart projections.  The ordinary meaning is strong evidence of the

proper claim construction.  Phillips, 415 F.3d at 1313.

Defendants argue that the court should define projection as "a functional stop

member" because this is the only meaning provided for in the specification for the

projections.  This language comes from an example in the specification.  I agree with

Innovative that the example is not a limitation.  Further, it is problematic to define the

term by its stopping function.  The claim language selects a broader term, "projections,"

while the specification uses the more narrow terminology of "projections such as stops."

Pl's Markman Br. Ex. D. col. 6 ll. 59.  When the patentee uses a broader term in the claim

language than the specification, it is improper to limit the claim term to an example in the

specification.  See Teleflex, Inc., 299 F.3d at 1326.

Based upon the ordinary meaning supported by the specification, I find that

"projection" means "a part which projects or juts out from the sidewall of the end cap."

**B.      Claims Relating to the Forearm Extension**

**(1)      Means for securing the forearm extension to the second end cap shaft**

At the <u>Markman</u> hearing, the parties stipulated to Innovative's definition of this term.  The "means for securing the forearm extension to the second end cap shaft" is "a screw through a coupling top attached to the end shaft, and equivalents thereof."

**(2)      Means for attachment of the forearm extension to a device**

Under 15 U.S.C. § 112, ¶ 6,[9] Congress has permitted "a patent applicant to express an element in a combination claim as a means for performing a function."  <u>Valmont Indust., Inc. v. Reinke Mfg. Co.</u>, 983 F.2d 1039, 1042 (Fed. Cir. 1993).  This language must be interpreted using a two-step process.  <u>Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.</u>, 296 F.3d 1106, 1113 (Fed. Cir. 2002).  First, the court must identify the claimed function.  <u>Id</u>.  To do so, the court must construe the function to include the limitations contained in the claim language; it is not proper to narrow or broaden the scope of the function beyond the claim language.  <u>Id</u>.  Ordinary principles of claim construction

_____

[9] Means plus function language is explained by the Federal Circuit in <u>Valmont Industries, Inc.</u>: "Congress decided to permit broad means-plus-function language, but provided a standard to make the broad claim language more definite. The 1952 Patent Act included a new section 112. This new language permits a patent applicant to express an element in a combination claim as a means for performing a function. The applicant need not recite structure, material, or acts in the claim's means-plus-function limitation.... The second clause of the new paragraph, however, places a limiting condition on an applicant's use of means-plus-function language....[because a] claim limitation described as a means for performing a function, if read literally, could encompass any conceivable means for performing the function."  Means plus function claims should be therefore be construed narrowly because "[a]n element of a claim described as a means for performing a function, if read literally, would encompass any means for performing the function."  <u>Id</u>. (internal citations omitted).

govern interpretation of the claim language used to describe the function. Second, the court must determine what structure, if any, disclosed in the specification corresponds to the claimed function. Id. To qualify as corresponding, the structure must not only perform the claimed function, but the specification must clearly associate the structure with performance of the function. Id.

Claims 55 and 82 of the '274 Patent provide that the forearm extension have means for attachment to the shaft of the devise. The court must apply the special "means plus function" analysis described above. The parties agree on the first stage of the analysis. The claimed function that this "means" performs is attaching the forearm extension to the devise. The parties disagree, however, on the second stage of the analysis: which structures correspond to this claimed function. Innovative proposes that a female coupling at one end of the forearm extension is the structural component of the means for attachment. Defendants argue that means for attaching should be construed as including "a bushing and a set screw formed within a wall of the female coupling and equivalents of such structures, i.e. a bolt or rivet."

The patent specification makes it clear that a female coupling is the means for attachment. Pl's Markman Br., Ex. A. col. 5 ll. 46-50 ("The second female coupling 144 is for attachment to a device mounting...".). The bushing and the set screw perform a different function of allowing the device mount to rotate or be set in position, as outlined in the specification. Id. col. 11 ll. 45-55 ("When the set screw 222 is tightened it causes

the bushing 220 to flex inward and frictionally engage the shaft and thus prevent the

device mount from rotating around the female coupling.").

Moreover, these extraneous features are set forth in dependent claims 61-62 that

have not been asserted against defendants.  See id. at col. 17 ll. 7-16.  Under the doctrine

of claim differentiation, "limitations stated in dependent claims are not to be read into the

independent claim from which they depend."  Nazomi Communications, Inc. v. Arm

Holdings, PLC, 403 F.3d 1364, 1370 (Fed. Cir. 2005).  Since these additional limitations

regarding the set screw are found in dependent claims, the broader "means for

attachment" does not include these limitations.

The court finds that "means for attachment" means "a female coupling at one end

of the forearm extension and equivalents thereof."

### (3)     Plurality of voids extending between said top and bottom

This term can be found in claims 1 and 11 of the '874 Patent.  Innovative argues

that "'voids extending between said top and bottom ends' means gaps or spaces which

extend in the space between the top and bottom ends."  Defendants construe the term to

mean "multiple openings entirely disposed within the walls of the first coupling, which

are not grooves, and extend the entire length of the coupling."

Requiring the voids to extend the entire length of the coupling is contrary to the

ordinary meaning of "between."  For that reason alone, I disagree with the defendant.

The figures accompanying the patents, which show that the voids do not go through to the

-13-

top because they are only visible from a bottom view, not a top view.  Pl's Markman Br. p. 21.

The ordinary meaning of the language together with the drawings in the patents establish that "plurality of voids" means "gaps or spaces which extend in the space between the top and bottom ends."

### (C)    Claim Terms Relating to the Tilter Assembly Invention

Innovative's '988 Patent relates to the invention of a tilter used to position an electronic device such as an flat screen monitor.

### (1)    Bushing

The term bushing is used throughout the claims and specification for the '988 Patent.  While the parties agree that bushing must be construed as a hollow cylinder in accordance with its ordinary meaning, they dispute whether the patent limits the type of material used to construct the bushing.

The claim language of the '988 Patent does not specify that the bushing must be composed of certain material.  See e.g. Pl's Markman Br. Ex. E. col. 7 ll. 21-22 ("a bushing").  This accords with the ordinary meaning of bushing as being made from metal or other material.  Id. at Ex. I.  The patent specification to the '988 Patent states that a plastic bushing might be advantageous to avoid frictional contact between the support block and the tilter shaft.  Id. at col. 5 ll. 17-32.  Yet, the applicant decided not to claim the material of the bushing in the patent.  Therefore, Innovative argues the claimed

invention should not be construed narrowly as a non-metalic bushing.  Defendants, on the other hand, contend that the bushing must be made of a non-metalic material because the applicant disavowed metal bushings in the '988 patent specifications by stating the advantages of plastic.

The patent applicant's decision to claim a bushing without limiting the construction material shows an intention to cover all material for bushings.  Therefore, the court will construe "bushing" to mean "a hollow cylinder," without limiting the material of its construction, in accordance with the general rule of construction that limitations in the specification are not to be read into the patent claims.  Prima Tek II, 412 F.3d at 1289.

### (2)    Support Block

Claims 1, 44, 45, 49-52 of the '988 Patent also uses the phrase "support block." Innovative argues that the court should construe this phrase to mean "a block to support other components" according to its ordinary and customary meaning.  Defendants, once again, propose a more narrow definition by seeking to import the specification limits into the purposefully general claim language.  Defendants urge the court to construe support block as "a cast generally cubical block having a bushing hole and a shaft hole extending nearly the entire height of the support block" based on the specification.  See Pl's Markman Br. Ex. E. col. 4 ll. 10-15.  For the reasons related in the analysis of the "bushing" term, the court will not limit the claim language by reference to the

specification.  Therefore, the term "support block" is construed to mean "a block to support other components."

### (3)   Center Tilt Mount

Claims 1, 44, 45, 49-52 of the '988 Patent also uses the phrase "center tilt mount." Innovative asserts that center tilt mount should be construed according to its ordinary meaning as a "a center mount configured to tilt."  Defendants again look to the patent specification to advance a narrower claim construction, arguing that center tilt mount means "a cast mount having a generally square shaped base with stops on the inner surface of the base, flanges having shaft holes for accepting a shaft, and a rivet hole in the center of the base."  Defs' Markman Br. p. 25, (citing '988 Patent, Ex. E. col. 4 ll. 52-67). For the reasons stated above, the court will adopt Innovative's construction and find that "center tilt mount" means "a center mount configured to tilt."

### (4)   Rotating Plate

This term is used in claims 44, 49, and 50 of the '988 Patent.  Innovative argues that according to its ordinary and customary meaning this term should be construed to mean a plate which rotates.  Defendants advance a more specific definition that rotating plate means "a generally square plate which has a rivet hole at the center, a recessed portion, and four mounting holes disposed at the corners" based on one of the patent specifications.  See Pl's Markman Br. Ex. E. col. 5 ll. 52-60.  Since defendants' construction unnecessarily and improperly imports features from the specification, the

court will adopt Innovative's construction and find that "rotating plate" is "a plate which rotates."

### (4)    Set Screw

Immediately prior to the <u>Markman</u> hearing, the parties asked the court to construe this additional term in the '988 Patent.  Innovative advances a definition of the term in accordance with the term's ordinary meaning and one that is consistent with the claim language by arguing that set screw is "a machine screw designed to be screwed through a metal part (as a collar) and to jam tightly upon another part (as a shaft) so as to prevent relative movement."  Once again, defendants seek to improperly limit the definition to the specification by arguing that set screw is "a screw that is threaded into an object to interfere with the rotation of another object."  <u>See</u> Pl's Markman Br. Ex. E. col. 5 ll. 42-44.  For the reasons described above, the court will adopt Innovative's definition and find that "set screw" means "a machine screw designed to be screwed through a metal part (as a collar) and to jam tightly upon another part (as a shaft) so as to prevent relative movement."

### (D)    Open Channel

The term "open channel" appears in claim 12 of the '433 Patent, where it is described as "said plurality of ribs extend to a location below said upper edge, said ribs forming an open channel extending between said first and second ends of said body between said upper edges of said sidewalls and said plurality of ribs."  Pl's Markman Br.

Ex. F. col. 17 ll. 63-67.  Defendants requests that the court determine that the term is not

amenable to construction because it is indefinite.  Innovative responds that the

prosecution history clarifies that "open channel" is an unobstructed channel or pathway

between the first and second end bodies.  See Pl's Resp. Markman Br. pp. 24-25 (citing

the prosecution history of the term "open channel").

Defendants do not meet the high hurdle for declaring a claim term indefinite.

According to the Federal Circuit, clear and convincing evidence is required to invalidate a

patent because patents are presumptively valid:

> Only claims not amenable to construction or insolubly ambiguous are
> indefinite....If the meaning of the claim is discernible, even though the task may be
> formidable and the conclusion may be one over which reasonable persons will
> disagree, we have held the claim sufficiently clear to avoid invalidity on
> indefiniteness grounds.  In this regard it is important to note that an issued patent is
> entitled to a statutory presumption of validity.  By finding claims indefinite only if
> reasonable efforts at claim construction prove futile, we accord respect to the
> statutory presumption of validity and we protect the inventive contribution of
> patentees, even when the drafting of their patents has been less than ideal.

Datamize, LLC v. Plumtree Software, Inc., 417 F.3d 1342, 1347-48 (Fed. Cir. 2005)

(finding that the claim term "aesthetically pleasing" failed as indefinite) (internal citations

omitted).   Since one ordinarily skilled in the art would understand the claim term "open

channel," the court will not find that it fails as indefinite.   "Open channel" means "an

unobstructed channel or pathway in the area defined in claim 12."

## IV.    CONCLUSION

For the reasons stated above, the terms at issue will be construed as outlined in the

<u>Markman</u> order that follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| INNOVATIVE OFFICE | : | **CIVIL ACTION** |
| PRODUCTS, INC., | : | |
|       Plaintiff, | : | |
| | : | |
|   v. | : | NO. 05-04037 |
| | : | |
| SPACECO, INC., et al, | : | |
|       Defendants. | : | |

**O R D E R**

**AND NOW**, this 23rd day of August, 2007, upon consideration of the parties'

briefs and after a Markman hearing, it is hereby **ORDERED** that the patent claims at

issue will be construed as follows:

1.     "Roller" means "an elongated body with a central portion between the sidewalls of the channel and ends which extend outward of the sidewalls of the channel."

2.     "Integrally cast" means "formed by cast molding as part of the same piece."

3.     "Projection" means "a part which projects or juts out from the sidewall of the end cap."

4.     "Means for securing the forearm extension to the second end cap shaft" means "a screw through a coupling top attached to the end cap shaft, and equivalents thereof."

5.     "Means for attachment of the forearm extension to the device" means "a female coupling at one end of the forearm extension and equivalents thereof."

6.     "Plurality of voids extending between said top and bottom ends" means "gaps or spaces which extend in the space between the top and bottom ends."

7.      "Bushing" means "a hollow cylinder."

8.      "Support block" means "a block to support other components."

9.      "Center tilt mount" means "a center mount configured to tilt."

10.     "Rotating plate" means "a plate which rotates."

11.     "Set screw" means "a machine screw designed to be screwed through a metal part (as a collar) and to jam tightly upon another part (as a shaft) so as to prevent relative movement."

12.     The court will not construe the term "roller wall" at this time as there is no genuine dispute regarding this claim term.

13.     The court also holds that the term "open channel" does not fail as indefinite and means "an unobstructed channel or pathway in the area defined in claim 12."

BY THE COURT:


/s/ Lawrence F. Stengel

LAWRENCE F. STENGEL, J.