IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| INNOVATIVE OFFICE PRODUCTS,: | CIVIL ACTION | |
| INC., : | | |
| Plaintiff : | | |
| : | | |
| v. : | NO. 05-4037 | |
| : | | |
| SPACECO, INC. and SPACECO : | | |
| BUSINESS SOLUTIONS, INC. : | | |
| Defendants : | | |

## M E M O R A N D U M

STENGEL, J.                                                    August 28, 2008

This is a patent law infringement case involving extension arms used to position computer monitors over desk surfaces.  On December 21, 2007, defendant filed this Motion to Stay Proceedings Pending the Completion of the Reexaminations by the United States Patent and Trademark Office ("USPTO").  Plaintiff filed a memorandum in opposition on January 15, 2008.  For the reasons stated below, I will deny defendant's Motion to Stay.

I.      BACKGROUND

Plaintiff, Innovative Office Products, Inc. ("Innovative") is a Pennsylvania corporation that develops and produces electronic device support products such as monitor arms and accessories to position electronic devices such as flat screen displays and tilter assemblies.  Defendant SpaceCo, Inc. ("SpaceCo") is a Colorado corporation. Defendant SpaceCo Business Solutions, Inc. ("SpaceCoBS") is a Nevada corporation. Both defendants are also in the business of developing and selling monitor extension arms

to position similar electronic devices.  Both defendants market monitor extension arms

under the mark "SPACEARM."

On July 28, 2005 Innovative filed a complaint charging SpaceCo with

infringement of seven United States patents.  The following seven patents are at issue in

this case:

(1)     On January 14, 2003, the United States Patent and Trademark Office (the
        "USPTO") issued United States Patent No. 6,505,988 (the "'988 patent").[1]
        for an invention entitled "Tilter for Positioning Electronic Devices."

(2)     On February 15, 2005, the USPTO issued United States Patent No.
        6,854,698 (the "'698 patent") for an invention entitled "Arm Apparatus for
        Mounting Electronic Devices."

(3)     On October 18, 2005, the USPTO issued United States Patent No.
        6,955,328 (the "'328 patent") for an invention entitled "Arm Apparatus for
        Mounting Electronic Devices."

(4)     On January 10, 2006, the USPTO issued United States Patent No. 6,983,917
        (the "'917 patent") for an invention entitled "Arm Apparatus for Mounting
        Electronic Devices."

(5)     On February 7, 2006, the USPTO issued an Ex Parte Reexamination
        Certificate of United States Patent No. 6,478,274 (the "'274 patent") for an
        invention entitled "Arm Apparatus for Mounting Electronic Devices."

(6)     On June 27, 2006, the USPTO issued United States Patent No. 7,066,433
        (the "'433 patent") for an invention entitled "Arm Apparatus for Mounting
        Electronic Devices with Cable Management System."

(7)     On March 28, 2006, the USPTO issued United States Patent No. 7,017,874
        (the "'874 patent") for an invention entitled "Arm Apparatus for Mounting
        Electronic Devices."

---

[1]Odd N. Oddsen, Jr. invented the subject matter of all the patents and Innovative is the lawful owner.

Innovative is seeking to stop the continuing infringement of its patents by SpaceCo and damages caused by the infringement.

Fact discovery was completed on January 31, 2008.  The court held a Markman[2] hearing on February 27, 2007.  Shortly thereafter in March 2007, defendant SpaceCoBS filed for voluntary bankruptcy in the United States Bankruptcy Court for the District of Colorado (Bankruptcy Court).  The court received notice of the bankruptcy proceedings and placed the case in civil suspense on April 10, 2007.  On May 31, 2007, the parties requested that the court complete and issue the Markman order per an oral order of Judge Howard Tallman of the Bankruptcy Court.  Innovative sought relief from the automatic stay and requested a scheduling order on October 24, 2007.  Expert discovery concluded on March 14, 2008.

Since the patents-in-suit were filed against SpaceCo in July 2005 and in February

---

[2] In Markman v. Westview Instruments, 517 U.S. 370, 372 (1996), the Supreme Court held that the construction of a patent is a matter of law to be conducted by the court and not the jury.  Determining whether a patent has been infringed is a two-step analysis.  Cyber Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc) (citations omitted).  First, a court must properly construe the patent's claims to determine their scope and meaning.  Id.  Second, the properly construed claim must be compared to the device accused of violating the patent to determine whether the defendant has infringed the plaintiff's patent.  Id.  The purpose of the Markman hearing is to accomplish the first step of the process because the bedrock principle of patent law requires that the claims of the patent define the invention to which the patentee has the right to exclude others.  Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005 (en banc), cert denied, 126 S. Ct. 1332 (2006).  After the court has properly construing the patent claims, the finder of fact performs the second step of the analysis by comparing the claims to the allegedly infringing device to determine if the patent has been infringed.  See Bai v. L&L Wings, Inc., 160 F.3d 1350, 1353 (Fed. Cir. 1998); Wolverine World Wide, Inc. v. Nike, Inc., 38 F.3d 1192, 1199 (Fed. Cir. 1994).

and September 2006, SpaceCo has filed for reexamination on all seven patents.[3]  Chapter

35 of the United States Code, Sections 302-307, governs the reexamination of patents.

The reexamination procedure allows any person to request that the USPTO reevaluate the

patentability of claims of an unexpired patent.  35 U.S.C. § 302.  The request must be

based on prior art that raises 'a substantial new question of patentability' and may be in

the form of an ex parte request.  Once a reexamination request is granted, an examiner is

assigned to conduct the reexamination with "special dispatch."  37 C.F.R. § 1.550(a).

The process concludes with the issuance of an ex parte reexamination certificate

cancelling any unpatentable claims, confirming patentable claims and incorporating any

amended or new claims.  37 C.F.R. § 1.550(a); 35 U.S.C. § 307.

      The reexamination procedure provides an opportunity for the USPTO to adjudge

---

[3]

| U.S. Patent No. | Issue Date | Patent Asserted in Complaint | Date of Reexam Request |
|---|---|---|---|
| 6,478,274 | 10/12/02 | 2/22/06 | 1st Request - 9/6/06<br>2nd Request - 1/9/07<br>3rd Request - 7/3/07 |
| 6,505,988 | 1/14/03 | 7/18/05 | 7/3/07 |
| 6,854,698 | 2/15/05 | 7/18/05 | 7/20/07 |
| 6,955,328 | 10/18/05 | 2/22/06 | 5/25/07 |
| 6,983,917 | 1/10/06 | 2/22/06 | 7/19/07 |
| 7,066,433 | 6/27/06 | 9/18/06 | 5/25/07 |
| 7,017,874 | 3/28/06 | 9/18/06 | 1st Request - 7/5/07<br>2nd Request - 12/21/07 |

the valid scope of the patent claims.  This process, on average, takes 22.8 months and the median pendency from the filing date to certificate issue date is 17.6 months.  See United States Patent and Trademark Office, Ex Parte Reexamination Filing Date, June 30, 2006. These averages are subject to change and likely to lengthen as a result of the Supreme Court's decision in KSR Int'l Co. V. Telefax Inc., 127 S. Ct. 1727 (2007), which altered the obviousness standard for patentability.  This will most likely result in an extremely large number of reexamination requests, which will increase the average pendency of the reexamination process.

## II.    STANDARD OF LAW

The decision of whether or not to stay a patent case during reexamination is discretionary. Stryker Trauma S.A. v. Synthes (USA), 2008 WL 877848, 1 (D.N.J., 2008); Viskase Corp. v. American Nat'l Can Co., 261 F.3d 1316, 1328 (Fed. Cir. 2001); Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988).  There is no conflict between a reexamination and a challenge to a patent in federal court, despite the fact that the two forums may come to differing conclusions on the same patent; the PTO and the district courts apply different standards and come to different legal conclusions.  Ethicon, Inc., 849 F.2d at 1428-29, n. 3.

In deciding whether to stay a matter pending reexamination, courts have developed a three-part test "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in

question and trial of the case; and (3) whether discovery is complete and whether a trial

date has been set." <u>Stryker Trauma</u>, 2008 WL 877848, 1 (D.N.J., 2008); <u>Xerox Corp. v.</u>

<u>3Com Corp.</u>, 69 F. Supp 2d 404, 406 (W.D.N.Y. Feb. 18, 1999).  Other courts have

provided alternative phrasing for this standard "[i]n deciding whether to grant a stay, the

court must weight the benefits of the stay against the costs." <u>Motson v. Franklin Covey</u>

<u>Co.</u>, No. 03-067, 2005 WL 3465664, at *1 (D.N.J. Dec. 16, 2005); <u>Middleton, Inc. v.</u>

<u>Minnesota Mining & Mfg. Co.</u>, No. 03-40493, 2004 WL 1968669, at *3 (S.D.Iowa Aug.

24, 2004).

III.    **DISCUSSION**

    **A.     Prejudice and Tactical Advantage**

      SpaceCo argues that beyond a delay, there is no undue prejudice or clear tactical

disadvantage to Innovative if a stay is granted.  They claim that Innovative will not suffer

irreparable harm by the alleged lost sales to the "SpaceArm" product during a stay.  In

support of this claim, SpaceCo contends that Innovative tacitly admitted that it is not

being irreparably harmed by the alleged infringement because they have never moved for

a preliminary injunction.  They argue that since SpaceCoBS is presently bankrupt,

Innovative realizes that they may not be compensated with money damages, but still have

not moved for a preliminary injunction.  Thus, they must not be suffering irreparable

harm.  SpaceCo further asserts that there is nothing unique about this case that would

render a delay pending reexamination unduly prejudicial.  It is defendant's contention that

Innovative has produced no evidence or even alleged that defendants are significantly damaging the marketplace for Innovative's monitor arms.

Innovative claims that they will continue to be severely injured by the additional delay caused by a stay.  They assert that SpaceCo's continued sales of the infringing product has caused them and will continue to cause them irreparable harm.  Judge Tallman in the bankruptcy case affirmed that the "[d]ebtor's [SpaceCo] operations have had a negative impact on Innovative and that the alleged claims for infringement and royalties are significant... [s]hould either the patent litigation or the PTO examination take one year to complete, the Debtor's projected sales over that time could range from $3.6 to $6 million.  Even the possibility that all, or a substantial portion of this revenue could be derived from an infringing product line, poses a serious risk of irrevocable harm to Innovative through lost market share and sales revenue." In re SpaceCo Business Solutions, Case #07-12977 (Bankr.D.Colo.2007).

Since the original defendant is out of business and SpaceCoBS is presently bankrupt, it is unlikely that either company will be able to satisfy a large money damages award depending upon how this case is decided.  Thus, it is possible that Innovative will be left with no recourse and a long term loss of market share and revenue.  Innovative argues that the reexamination of seven patents will take several years to complete and that this delay will allow SpaceCo to continue to infringe on Innovative's patent and diminish their market share and sales.

Innovative further asserts that this motion is yet another attempt[4] by SpaceCo to delay Innovative's claims so that they can continue to infringe Innovative's patented product.  Innovative argues that SpaceCo's dilatory conduct is a basis for denying a stay. See e.g., Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc., No 03-1431, 2007 WL 1655625, at *4 (N.D. Cal. June 7, 2007)(parties should not be permitted to abuse the reexamination process by seeking reexamination after protracted, expensive discovery or trial preparation, where to do so would allow the party to use reexamination as a mere dilatory tactic);  Remington Arms Co. v. Modern Muzzleloading, Inc., No. 2:97CV00660, 1998 WL 1037920, at *3 (M.D.N.C. Dec. 17, 1998)("[g]enerally, courts are reluctant to stay proceedings where a party is using the reexamination process merely as a dilatory tactic.").  The patents-in-suit were asserted against SpaceCo in July 2005, and in February and September 2006 and SpaceCo waited as long as two years to file requests to reexamine.  Innovative argues that the amount time and the number of reexaminations requested clearly indicates SpaceCo's attempted gamesmanship in tying up Innovative's patents.

Innovate is suffering irreparable harm and prompt adjudication of this dispute is in the best interest of both parties and justice.  This suit was filed in July 2005 and has already been stayed once during SpaceCoBS's voluntary bankruptcy.  SpaceCo has

---

[4] Innovative claims that SpaceCo has attempted to delay the determination of infringement at least three times: (1) when they transferred their business from SpaceCo to a new entity, SpaceCo Business Solutions; (2) when SpaceCo voluntary filed for bankruptcy, placing the claims in automatic stay; and (3) when they filed this motion to stay pending the outcome of the reexaminations.

sought to delay the adjudication of this dispute on numerous occasions and has most recently filed a Motion to Reconsider the Construction for the Voids Claim Limitation that was ruled upon at the *Markmen* hearing.  These dilatory tactics are allowing SpaceCo to continue to possibly infringe on Innovatice's patents without any ramifications.  Innovate continues to lose market share and revenue the longer this suit continues.  Furthermore, there is nothing stopping SpaceCo from filing reexamination requests indefinitely.  In light of the substantial time and resources already invested in this litigation, a lengthy stay would prejudice the plaintiff.  This factor weighs in favor of denying a stay.

### B.      Simplification of Remaining Issues

SpaceCo argues that granting a stay will significantly simplify the issues in this case for trial.  They contend that the reexaminations will likely result in many claims being cancelled or amended and that a stay will conserve judicial resources by not requiring the court to decide upon later cancelled or amended claims.  SpaceCo asserts that granting stay will relieve the parties from conducting expert discovery, summary judgment practice and trial on an improper set of claims.

Innovative contends that the delay and costs of a stay significantly outweigh the small chance that the reexaminations will simplify the remaining issues.  They claim that in order for the reexaminations to obviate the need for a trial on even one of the seven patents, the reexamination would need to result in a cancellation of all the asserted claims

of that patent.  They argue that SpaceCo has not presented compelling evidence to show that the reexaminations will be cancelled or amended.  Innovative asserts that it would be unfair to subject them to at least two more years of willful and deliberate patent infringement on the chance that a claim will be amended or cancelled.  Since 1981, 91% of all ex parte reexamination requests have been granted, but only 12% of those requested have resulted in decisions cancelling all claims.  However, 29% of these reexaminations have affirmed all claims.  Innovative argues that the chance of this 12% possibly occurring seven consecutive times for the seven reexaminations is infinitesimally small. United States Patent and Trademark Office, Ex Parte Reexamination Filing Data, June 30, 2006.

The reexaminations do have the potential for simplifying the remaining issues in this case, but at the expense of placing the suit on hold for another year or more.  The potential irreparable harm far outweighs the slight chance that all claims will be cancelled.  In fact, there is a greater chance that all claims will be affirmed in their present state.  Even if some of the claims are amended, the time and expense of adjusting expert reports and motions once all discovery is completed and the case is ready for trial is minor in light of the potential harm.  The possibility of simplifying some of the claims at issue in the case is outweighed by the potential harm that prolonging this suit could have on Innovative.

**C.     Effect of the Stay on the Trial Schedule and Discovery**

SpaceCo argues that the present stage of proceedings is the ideal time for a stay. They contend that since the case is still in the pre-trial stage with basic fact discovery and non-expert depositions and document production completed, there is no fear of witness' memories fading or documents being lost during the stay.  A trial date has not yet been set.

Innovative claims that the current status of this case favors denying the requested stay. All discovery on the patent infringement and validity issues, the nature of the accused products, the prior art for invalidity, secondary considerations for invalidity and even sales for damages are complete.  Claim construction issues have also been resolved and expert discovery is now complete.  Innovative argues that the most efficient manner to adjudicate this matter is to allow it to proceed to trial.

The present stage of proceedings in this matter favors denying the requested stay. Basic fact discovery and expert discovery has been completed and a trial date is pending. Granting a stay at this time to await the outcome of multiple reexaminations, which could take several years, would be inefficient and costly for all parties involved.

On balance, the benefits of a stay are far outweighed by the costs of a delay. Innovative will suffer irreparable harm and be unduly prejudiced if this action is indefinitely delayed.  Furthermore, all discovery has been completed and this case is ready for trial.  The possible simplification of some of the claims as a result of the

reexamination is far outweighed by the harm that Innovative could suffer.

IV.    **CONCLUSION**

For the reasons stated above, I will deny the defendant's Motion to Stay Pending the Completion of the Reexaminations by the USPTO of the Patent-In-Suit.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **INNOVATIVE OFFICE PRODUCTS,** | **:** | **CIVIL ACTION** |
| **Plaintiff** | **:** | |
| | **:** | |
| **v.** | **:** | **NO. 05-4037** |
| | **:** | |
| **SPACECO, INC. and SPACECO** | **:** | |
| **BUSINESS SOLUTIONS, INC.** | **:** | |
| **Defendants** | **:** | |

## O R D E R

**STENGEL, J.**

**AND NOW**, this 28th day of August, 2008, upon consideration of the defendant's

Motion to Stay (Document #106) and plaintiff's response thereto, it is hereby

**ORDERED** that the motion is **DENIED**.

BY THE COURT:


/s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.